**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 2, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

v.                                                    No. 12-1066

DENISE ANN VIGIL, a/k/a Denise
Herrera-Ruiz,

             Defendant - Appellant.

---

**Appeal from the United States District Court**
**for the District of Colorado**[*]
**(D.C. No. 1:08-CR-00392-JLK-1)**

---

John F. Walsh, United States Attorney, and Paul Farley, Assistant U.S. Attorney, Denver, Colorado, for Plaintiff - Appellee

Scott T. Poland of Poland and Wheeler, P.C., Lakewood, Colorado, for Defendant - Appellant

---

Before **LUCERO**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

---

**O'BRIEN**, Circuit Judge.

---

    [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).   The case is therefore submitted without oral argument.

Denise Ann Vigil appeals from a twelve-month prison sentence imposed on February 7, 2012, following a series of revocations of probation or supervised release. She argues the sentence is unreasonable because it is three months longer than the maximum recommended by the Sentencing Guidelines and no exceptional circumstances warranted the variance. The judge imposed condign punishment. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 4, 2006, Vigil pled guilty to making a false statement, a Class D felony, in violation of 18 U.S.C. § 1001, for which she was sentenced to three years of probation with no early discharge. The special conditions of her probationary sentence required her to: (1) perform 200 hours of community service, (2) complete parenting classes, and (3) obtain a G.E.D. Although she entered her plea in the Western District of Texas, her case was transferred to the District of Colorado, when she moved from Texas to Colorado in 2008.

In 2009, Vigil's probation officer petitioned for revocation of her probation because she had: (1) pled guilty to child abuse; (2) submitted a report falsely claiming to have completed 200 hours of community service at Goodwill; and (3) failed to perform any community service. At an April 1, 2009, hearing, her probation was revoked, and she was sentenced to time served in detention prior to sentencing (six days) and two years of supervised release, six months of which was to be in a halfway house. Under the special conditions of her supervised release, she was ordered to: (1) complete 200 hours

- 2 -

of community service, (2) reside in a Community Corrections Center for six months, (3) complete parenting classes, (4) obtain a G.E.D. certificate, (5) take all prescribed medications and cooperate with random blood tests, and (6) participate in a mental-health treatment program. At disposition, the judge admonished her:

> And if you so much as violate even a curfew rule, you so much as tell one lie to anybody that is responsible for you as a probation officer or at that halfway house, you are coming back here, and you're going to get the full sentence with no time off.
>
> You are looking now at six months in a halfway house and 18 months on supervised release. And if there's one violation, you are going to do the full time that the law permits in prison, not in a halfway house. Do you understand me?

(R. Vol. III at 8). Vigil responded, "Yes." *Id.*

In August 2009, four months later, Vigil admitted to having violated her supervised release by possessing and using a controlled substance, failing to follow the instructions of her probation officer, and failing to comply with the rules of the Residential Re-entry Center (RRC).[1] The judge resentenced her to two years of imprisonment followed by one year of supervised release. The special conditions of that supervised release required her to: (1) participate in a program of testing and treatment for drug abuse, (2) participate in mental-health treatment, (3) take all prescribed medication and comply with random blood tests, (4) perform 200 hours of community service, and (5) complete parenting classes.

---

[1] The record refers to both a Community Correction Center and a Residential Re-entry Center. We assume they are the same, not that it matters much.

In March 2011, the outset of her supervised release, Vigil agreed to complete ten hours of community service each week. She not only failed to meet this requirement, but also never started parenting classes, had numerous absences from her G.E.D. classes, and missed group counseling sessions. Because she appeared to be following her pattern of noncompliance with release conditions, her probation officer petitioned to modify the conditions and also requested that she be placed in a RRC for up to six months, until she successfully completed the conditions of her supervised release. Vigil did not oppose the modification. In October 2011, the sentencing judge ordered the modification and placed her in a RRC. True to past practice, Vigil failed to comply with the RRC rules or participate in substance-abuse and mental-health treatment. Consequently, a warrant was issued for her arrest, and a revocation hearing was scheduled.

Prior to the revocation hearing, Vigil had moved for a variant sentence; she requested to be sentenced to time served (35 days) and have her case terminated. Her failure to comply with her supervised-release conditions, she claimed, was because of "mental health issues," diagnoses of "major depression, chronic, cannabis dependence, in remission, and obsessive compulsive disorder," reported in May 2011. Defense counsel contended the "federal criminal justice system has done enough to try and rehabilitate Ms. Vigil," and "such efforts have been counter productive"; thus, further prison time would not "have any positive benefit either for Ms. Vigil or society."

Vigil's probation officer detailed her many supervised-release violations in a Supervised Release Violation Report. Based on Vigil's Grade C violations and a

criminal history category of I, the probation officer recommended the sentencing range set forth in the Chapter 7 policy statement, which was three to nine months of imprisonment, U.S.S.G. § 7B1.4(a); the statutory maximum is twenty-four months, 18 U.S.C. § 3583(e)(3). Because of Vigil's history of noncompliance, the probation officer recommended a sentence of nine months of imprisonment with no supervised release.

At the February 7, 2012, hearing on Vigil's supervised-release violations, her counsel repeated the points made in the motion for a variant sentence. The government responded:

> It's of particular note that the defendant in this case was convicted, originally, with a false statement crime. So she was committed with false statement, which is essentially lying to federal officers, and now, throughout the course of her supervision, throughout the time of probation, throughout her initial supervise[d] release, throughout her—now, her supervise[d] release, she continued to lie to her probation officers. That's not a function of depression, that's a function of someone who hasn't gotten the message.

(R. Vol. III at 20-21).

The judge explained his decision not to follow the Sentencing Guidelines:

> [Y]our case . . . is astonishing, in that it starts on such a minor basis, but there hasn't been a single change in you. You have lied through your first conviction and you have continued to lie on every single event that's in this violation report.

> The recommendations of the probation department for a nine-month sentence is, in my view, made because of the *slavish adherence to sentencing guidelines*, rather than . . . what's genuinely needed. But I also see the recommendation that no further supervise[d] release be done, and it's not because you achieved that much, it's because it just isn't worth it. When there are so many other people who are actually trying to respond and do what they can to comply with the terms of supervise[d] release.

So I'm not following that and *I am denying the motion for a variant sentence, because I'm not going to follow the guidelines in this case.* I don't have to, and the reason I'm not is because I don't think it's sufficient.

(*Id.* at 26-27) (emphasis added). The judge recognized the imprisonment range under the Chapter 7 policy statement was three to nine months, but chose not to follow it because the applicable policy statement did not "contemplate the repeated acts and false statements that are given and the failures to cooperate by this defendant." He sentenced Vigil to twelve months of imprisonment, half the maximum allowable sentence of two years. 18 U.S.C. § 3583(e)(3).

## DISCUSSION

Vigil argues the sentencing judge varied from a Guidelines sentence without sufficiently exceptional justifying circumstances. "In reviewing a sentence imposed after revocation of supervised release, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Handley*, 678 F.3d 1185, 1188 (10th Cir. 2012). "We will not reverse a sentence following revocation of supervised release if the record establishes the sentence is reasoned and reasonable." *Id.* (citation and internal quotation marks omitted). "[A] 'reasoned' sentence is one that is 'procedurally reasonable'; and a 'reasonable' sentence is one that is 'substantively reasonable.'" *United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011).

"Procedural reasonableness addresses whether the district court incorrectly calculated or failed to calculate the Guidelines sentence, treated the Guidelines as

- 6 -

mandatory, failed to consider the § 3553(a) factors, relied on clearly erroneous facts, or failed to adequately explain the sentence." *United States v. Reyes-Alfonso*, 653 F.3d 1137, 1144 (10th Cir. 2011) (citation and internal quotation marks omitted). "[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" *United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Vigil challenges only the substantive reasonableness of her sentence.

When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time. 18 U.S.C. § 3583(e)(3). The judge must consider the factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing Guidelines.[2] "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely constitute advisory policy statements." *United States v.*

---

[2] Chapter 7 of the Sentencing Guidelines provides:

Under 28 U.S.C. § 994(a)(3), the Sentencing Commission is required to issue guidelines or policy statements applicable to the revocation of probation and supervised release. At this time, the Commission has chosen to promulgate policy statements only. These policy statements will provide guidance while allowing for the identification of any substantive or procedural issues that require further review. The Commission views these policy statements as evolutionary and will review relevant data and materials concerning revocation determinations under these policy statements.

U.S.S.G. Ch. 7, pt. A1.

*Contreras-Martinez*, 409 F.3d 1236, 1240 (10th Cir. 2005) (citations and internal quotation marks omitted); *see United States v. Hurst*, 78 F.3d 482, 483 (10th Cir. 1996) ("[T]he policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G. [,including U.S.S.G. § 7B1.4(a),] are advisory rather than mandatory in nature"; a sentencing court simply considers them "in its deliberations concerning punishment for violation of conditions of supervised release." (citations and internal quotation marks omitted)). "All discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *United States v. Burdex*, 100 F.3d 882, 885 (10th Cir. 1996) (citation and internal quotation marks omitted).

"In imposing sentences after revocation of supervised release, district courts are obligated to consider Chapter 7's policy statements. Magic words, however, are not required to demonstrate fulfillment of this requirement." *United States v. Tedford*, 405 F.3d 1159, 1161 (10th Cir. 2005) (citation omitted). The sentencing judge considered Vigil's blatant, repeated violations of the conditions of her probation and supervised release and determined the three-to-nine-month-imprisonment range recommended in the Chapter 7 policy statement was insufficient. *See United States v. Cordova*, 461 F.3d 1184, 1189 (10th Cir. 2006) (affirming as reasonable sentence above the § 7B1.4(a) range based on convicted defendant's numerous violations and apparent inability to abide by

conditions of supervised release); *accord United States v. Tsosie*, 376 F.3d 1210, 1218 (10th Cir. 2004); *United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004).

Vigil argues her sentence is unreasonable because, although she "remained unmotivated throughout her term of supervised release," and had a "propensity to misstate the truth," those characteristics do "not constitute 'severe' or 'exceptional' behavior." (Appellant's Br. at 16). But a court does not need to find severe or exceptional circumstances to impose a sentence above the range suggested in the Chapter 7 policy statements, which are not mandatory and even less compelling than established Guidelines. U.S.S.G. Ch. 7, pt. A. Because the sentencing judge considered the nature and circumstances of her numerous violations, her history and characteristics, and the recommended sentence of Chapter 7, Vigil's sentence is reasonable.[3]

According to Vigil, however, twelve months of imprisonment is an unreasonable sentence for her false statement, the crime for which she originally was sentenced. Her argument is quite at odds with the approach taken by the Guidelines. "[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of

---

[3] Even before *United States v. Booker*, 543 U.S. 220 (2005), determined the Sentencing Guidelines are advisory only, we explained "[b]ecause there is no applicable sentencing guideline for the sentence to be imposed after a violation of supervised release, our standard of review is plainly unreasonable." *Kelley*, 359 F.3d at 1304 (citation and internal quotation marks omitted). The sentence imposed need only be "reasoned and reasonable." *Id.* After *Booker*, *Rita v. United States*, 551 U.S. 338, (2007), and *Gall,* it would be hard to quarrel with our deferential approach in these kinds of cases.

- 9 -

the violator." *Id*. at 3(b). Moreover, her argument conveniently fails to recognize how her behavior has compounded her circumstances—a teaching moment apparently lost. The first judge used a carrot, encouraging her rehabilitation through participation in programs; her behavior remained unchanged. The second judge dangled another carrot, to no avail. He then used a stick, imposing incarceration followed by supervised release; still no change. The attempts to "provide the defendant with . . . correctional treatment in the most effective manner" utterly failed. 18 U.S.C. § 3553(a)(2)(D). All that was left was to impose "just punishment" for her most recent breach of trust. *Id*. at § 3553(a)(2)(A). That was done.

**AFFIRMED.**