**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JARON WILLIE JAMES,

      Defendant - Appellant.

No. 14-6169
(D.C. No. 5:07-CR-00200-R-1)
(W.D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO** and **McHUGH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to honor the parties' request for a decision on the briefs without oral

argument pursuant to Federal Rule of Appellate Procedure 34(f) and Tenth Circuit Rule

34.1(G).

Defendant Jaron Willie James appeals the district court's revocation of his term of

supervised release and imposition of a twenty-four-month term of imprisonment followed

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

by a twelve-month term of supervised release. Exercising jurisdiction under 18 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In February 2008, Mr. James pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court sentenced Mr. James to sixty-three months' imprisonment to be followed by thirty-six months' supervised release. In July 2012, Mr. James was released from prison and began serving his thirty-six-month term of supervised release. As part of the conditions of his supervised release, Mr. James was required to participate in a substance abuse program, to abstain from alcohol or any other intoxicant, and to undergo periodic drug testing. The supervised release was also conditioned on Mr. James not committing any federal, state, or local crime.

Apart from one positive drug test in January 2014, Mr. James substantially complied with the terms of his supervised release for two years. But on June 19, 2014, Mr. James was arrested for possessing counterfeit money and obstructing a police officer.[1] On that night, the Oklahoma City Police Department received a phone call from a Sonic Drive-In employee, who suspected that the occupants of a black Dodge Challenger were attempting to pay with counterfeit money. Police Master Sergeant

---

[1] Mr. James was also arrested for illegally possessing a firearm, and this charge was initially included as part of the basis for revoking his supervised release. But at Mr. James's preliminary hearing, the magistrate judge determined the circumstance were insufficient to establish that Mr. James possessed the firearm, which officers found in the glove box of the vehicle in which Mr. James was a passenger. The district court therefore struck the firearm possession as a basis for revocation.

2

Jeffrey Yust and Sergeant Ashley Zeckser responded to the call and observed a black Challenger driving quickly away from the Sonic. Master Sergeant Yust pulled the car over, approached the driver, and informed her that she was being arrested on suspicion of passing counterfeit money. As the driver exited the Challenger, an envelope full of counterfeit money fell from her lap.

While Master Sergeant Yust was accompanying the driver to the patrol car, Sergeant Zeckser spoke with the passenger, who was identified as Mr. James. Mr. James refused to exit the vehicle and resisted Sergeant Zeckser's attempts to force him to do so. Master Sergeant Yust then approached and warned Mr. James that if he did not cooperate, he would be tased or sprayed with O.C. gas.[2] Mr. James remained obstinate, and Master Sergeant Yust sprayed him just above the eyes with O.C. gas. When the gas appeared to have minimal effect, Master Sergeant Yust pulled Mr. James out of the car and, despite some resistance, forced Mr. James to the ground. Mr. James continued to struggle as Master Sergeant Yust attempted to place him in handcuffs. Only after Master Sergeant Yust used his taser was he able to control Mr. James. Sergeant Zeckser then searched the Challenger and uncovered a man's wallet containing Mr. James's identification and nine counterfeit $50 bills, each of which had the same serial number. The counterfeit bills discovered in the wallet also had the same serial number as the bill recovered from the Sonic.

---

[2] O.C. gas is commonly known as pepper spray and is derived by extracting oleoresin capsicum from cayenne pepper.

Upon further investigation, law enforcement connected Mr. James to another counterfeit-money incident that had taken place three days before Mr. James's arrest. Specifically, Special Agent Kevin Hall reviewed surveillance footage from and spoke with employees of an Oklahoma City Wal-Mart where approximately $500 in counterfeit money had been used to purchase jewelry. From the footage, Agent Hall determined that two men driving a black Dodge Challenger had made the purchase. Agent Hall identified Mr. James as one of the two men from the Wal-Mart footage.

The U.S. Probation Office thereafter submitted an Amended Petition for Warrant or Summons for Offender Under Supervision, recommending Mr. James's term of supervised release be revoked based on his commission of a federal, state, or local crime. Following a revocation hearing, the district court ruled that Mr. James had violated the conditions of his supervised release by obstructing officers, resisting arrest, and passing counterfeit money at Wal-Mart and at Sonic. The district court revoked Mr. James's supervised release and, "[c]onsidering and applying the sentencing factors under 18 U.S.C. 3553(a)," sentenced him to twenty-four months of imprisonment and twelve months of supervised release. In addition to all prior conditions, the district court ordered that during his term of supervised release, Mr. James "submit to a search of his person, property, or any automobile under his control to be conducted in a reasonable manner at a reasonable time, for the purpose of detecting firearms or controlled substances at the direction of the probation officer upon reasonable suspicion." *Id.* Mr. James timely appealed.

4

## II. DISCUSSION

On appeal, Mr. James asserts (1) the government presented insufficient evidence that he violated the terms of his supervised release, (2) the district court imposed an unreasonable sentence and failed to adequately state its basis for the sentence, and (3) the district court plainly erred in imposing a special search condition of supervised release. We address each argument in turn.

### A. The Government Demonstrated by a Preponderance of the Evidence that Mr. James Violated the Terms of His Supervised Release.

"We review orders revoking supervised release for an abuse of discretion." *United States v. Hammonds*, 370 F.3d 1032, 1034 (10th Cir. 2004). A district court is within its discretion in revoking a defendant's supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). This preponderance-of-the-evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Nutraceutical Corp. v. Von Eschenbach*, 459 F.3d 1033, 1040 (10th Cir. 2006) (quoting *Metro. Stevendore Co. v. Rambo*, 521 U.S. 121, 137–38 n.9 (1997)).

In this case, the government's evidence demonstrated that it was more likely than not that Mr. James violated the terms of his supervised release. Specifically, Master Sergeant Yust and Agent Hall presented testimony tying Mr. James to the passing of counterfeit money at the Sonic and Wal-Mart. Even if, as Mr. James argues, the evidence of his involvement in the Wal-Mart incident was not conclusive, when it is combined with the compelling evidence of Mr. James's participation in the Sonic incident, the

5

district court acted well within its discretion in finding by a preponderance of the evidence that Mr. James passed counterfeit money.

Master Sergeant Yust's testimony regarding Mr. James's violent and uncooperative behavior on the night of his arrest also provided sufficient evidence to support the district court's finding that Mr. James broke the law by obstructing an officer and resisting arrest. Although Mr. James argues his behavior was due to an involuntary reaction to the O.C. gas, this argument is inconsistent with Master Sergeant Yust's testimony that Mr. James was combative even before being sprayed. We therefore conclude the district court did not abuse its discretion in ruling that Mr. James violated the terms of his supervised release by passing counterfeit money, obstructing an officer, and resisting arrest.

## B. *The District Court's Sentence Was Procedurally and Substantively Reasonable.*

Mr. James next contends the district court's imposition of twenty-four months' imprisonment was procedurally and substantively unreasonable. He argues this sentence was significantly higher than the eight-to-fourteen-month range provided by the Federal Sentencing Guidelines (Guidelines). *See* U.S.S.G. § 7B1.4 (establishing a Guidelines range of eight to fourteen months for a Criminal History Category III, Grade B violation). He also contends the district court erred in focusing on just one among many factors listed in 18 U.S.C. § 3553(a)—specifically, incapacitation—when it imposed an above-Guidelines sentence.

"In reviewing a sentence imposed after revocation of supervised release, we review the district court's factual findings for clear error and its legal conclusions *de*

*novo.*" *United States v. Handley,* 678 F.3d 1185, 1188 (10th Cir. 2012). We will uphold a sentence following a revocation of supervised release "if it can be determined from the record to have been reasoned and reasonable." *United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1258 (10th Cir. 2006) (internal quotation marks omitted).

When sentencing a defendant after revoking supervised release, a district court must consider the Guidelines listed in U.S.S.G. § 7B1.4, but those Guidelines are advisory, not mandatory. *United States v. Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012). Because of § 7B1.4's advisory nature, a sentence above the suggested range is not considered a "departure," and the district court need not defend its decision to impose a sentence above the § 7B1.4 range. *United States v. Burdex*, 100 F.3d 882, 885 (10th Cir. 1996). Thus, "[a]ll discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *Vigil*, 696 F.3d at 1002 (internal quotation marks omitted).

In this case, the statutory maximum sentence the district court could impose on Mr. James was two years. 18 U.S.C. § 3583(e)(3) ("[A] defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than . . . 2 years in prison if such offense is a class C or D felony."). In sentencing Mr. James at the statutory maximum, the district court explained that it considered the sentencing factors in 18 U.S.C. § 3553(a) and concluded, based on his conduct with police officers, that Mr. James was "a threat to the public" and the best place for him was in prison, for as long as statutorily permitted. Although the district court focused on public safety

7

concerns, it also explicitly stated that the court had considered all of the § 3553 factors. This consideration was sufficient. *See Burdex*, 100 F.3d at 886 ("When imposing a sentence, a district court need only consider 18 U.S.C. § 3553(a) en masse and state its reasons for imposing a given sentence.").

Moreover, even if a lower, Guidelines-range sentence would have been reasonable, as Mr. James argues, this does not undermine our conclusion that the district court's above-Guidelines sentence was also reasonable. *See United States v. McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011) ("Defendant must do more than show that his preferred sentence was a reasonable one. . . . To obtain relief, he must show that the actual sentence imposed was outside [the] range of reasonableness."). Accordingly, the district court did not err in sentencing Mr. James to twenty-four months' imprisonment and twelve months' supervised release.

### C. The District Court Did Not Plainly Err in Imposing a Special Search Condition of Supervised Release.

Finally, Mr. James argues the district court erred in imposing a special search condition of his supervised release. Because Mr. James did not raise this argument in the district court, we review it for plain error. *United States v. Story*, 635 F.3d 1241, 1244 (10th Cir. 2011). Under this rigorous standard, Mr. James must establish that, in imposing the special search condition, the district court (1) committed error, (2) the error was plain, (3) the error affected his substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* We therefore first

determine whether the district court committed error in imposing a special search condition of supervised release.

A court may order special conditions of supervised release so long as the condition "(1) is reasonably related to the factors set forth in [§ 3553(a)] . . . ; (2) involves no greater deprivation of liberty than is reasonably necessary for the purpose set forth in [§ 3553(a)] . . . ; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d). The special condition imposed on Mr. James meets these criteria. First, subjecting Mr. James to reasonable-suspicion searches for the purpose of detecting firearms or controlled substances is reasonably related to Mr. James's criminal history and the government's interest in protecting the public. Second, this condition does not involve a greater deprivation of liberty than necessary. Mr. James's liberty interests are diminished while under supervised release and subjecting him to such searches is reasonably necessary to protect public safety. *Cf. United States v. Knights*, 534 U.S. 112, 119 (2001) ("[P]robationers do not enjoy the absolute liberty to which every citizen is entitled.") (internal quotation marks omitted)). Indeed, we have upheld as a reasonable condition of supervised release *suspicionless* searches based on the defendant's conviction for unlawful possession of a firearm. *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007). The reasonable suspicion requirement of the searches imposed on Mr. James thus creates a lesser deprivation of liberty than the condition we approved in *Hanrahan*. Third, Mr. James has pointed to no Sentencing Commission policy statement with which this special condition conflicts. We

9

therefore conclude that the district court did not commit error, let alone plain error, in imposing a special reasonable-suspicion-search condition of supervised release.

## III.    CONCLUSION

For these reasons, we AFFIRM the revocation of Mr. James's conditional release and his sentence of twenty-four months' imprisonment and twelve months' supervised release.

ENTERED FOR THE COURT


Carolyn B. McHugh
Circuit Judge