FILED
United States Court of Appeals
Tenth Circuit

September 13, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

RANDY DAVID MOORAD,

      Defendant - Appellant.

No. 18-6002
(D.C. No. 5:10-CR-00212-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

Randy Moorad appeals the district court's judgment sentencing him to three years in prison after he violated the terms of his supervised release. We affirm.

In 2011, Moorad pleaded guilty to one count of making a false statement to a financial institution in violation of 18 U.S.C. § 1014. The district court sentenced him to 41 months in prison and five years of supervised release. Moorad served his prison sentence, and his supervised release began on June 6, 2014.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Along with general reporting requirements, the terms of Moorad's supervised release required him to maintain a single checking account, disclose all of his bank accounts to his probation officer, participate in treatment for his gambling addiction, and refrain from entering or associating "with a[n]y legal or illegal gambling establishment." R. vol. 1, 39. Moorad initially complied with these terms. But in January 2015, Moorad's probation officer learned that Moorad opened multiple bank accounts without permission, allegedly stole over $12,000 from a casino, and allegedly defrauded a bank of $2,600.

When Moorad failed to report to his probation officer to discuss these violations, the district court issued a warrant for his arrest. Moorad reported several days later. But while his probation officer was escorting him to the U.S. Marshals Office, he fled on foot. Moorad remained at large for nearly three years, until a fugitive task force found and arrested him in Delaware in November 2017.

The district court conducted a hearing on Moorad's supervised-release violations. Moorad admitted to the violations but offered two explanations for his behavior: (1) his gambling addiction and (2) his sister's terminal illness. According to Moorad, his gambling-addiction treatment failed because his counselor told him he didn't have a gambling addiction; and, he said, his addiction caused him to violate the no-gambling provision of his supervised release. Further, in October 2014, his sister was diagnosed with terminal cancer. Moorad told the district court that he initially fled in early 2015 because he feared that if he were arrested, he would never

2

see his sister again. But Moorad's sister died in September 2015, and he failed to turn himself in after her death.

For its part, the government disputed Moorad's explanations. It argued Moorad's failure to comply with the terms of his supervised release didn't stem from his gambling addiction. Instead, it asserted Moorad's criminal history showed that "[h]e has a problem with committing fraud." R. vol. 2, 28. It also suggested that Moorad skipped his sister's funeral in order to continue evading the authorities. The government concurred with the probation office's recommended sentence: the statutory maximum of three years in prison and two years of supervised release. *See* 18 U.S.C. § 3583(e)(3).

In imposing the recommended sentence, the district court characterized Moorad's violations as "outrageous," R. vol. 2, 29, and declined to credit his explanations for his behavior. Further, the court concluded the maximum sentence was necessary to punish Moorad and to deter others from behaving similarly. Moorad appeals, arguing that his three-year sentence is substantively unreasonable.

"Substantive reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short." *United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). We review the substantive reasonableness of the district court's sentencing decision for abuse of discretion. *United States v. Lopez-Macias*, 661 F.3d 485, 488–89 (10th Cir. 2011). That means we will reverse only "if the [district] court 'exceeded the bounds of permissible choice,' given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053

(10th Cir. 2007) (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)).

"When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time." *United States v. Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012); *see also* § 3583(e)(3). In so doing, the district court "must consider the factors in 18 U.S.C. § 3553(a)" as well as the applicable policy statements in the Sentencing Guidelines. *Vigil*, 696 F.3d at 1002. And "[o]ur review of [a] sentence for substantive reasonableness is informed by the district court's consideration of these factors." *Walker*, 844 F.3d at 1256.

Among others, the statutory factors include (1) "the nature and circumstances of the offense"; (2) "the history and characteristics of the defendant"; and (3) the goal of imposing a sentence that reflects "the seriousness of the offense," provides just punishment, and deters future crime. § 3553(a). The applicable policy statements include suggested sentencing ranges for revocations of supervised release, but these ranges "are not mandatory and [are] even less compelling than established Guidelines." *Vigil*, 696 F.3d at 1003; *see also* U.S.S.G. Ch. 7, pt. A (noting that Sentencing Commission issued only "policy statements applicable to the revocation of . . . supervised release," not Guidelines). As such, "a [district] court does not need to find severe or exceptional circumstances to impose a sentence above the range suggested." *Vigil*, 696 F.3d at 1002–03.

Here, Moorad argues that his sentence is substantively unreasonable because the district court "failed to accord adequate weight to mitigating factors that the

4

district court was required to consider." Aplt. Br. 6; *see also Walker*, 844 F.3d at 1259 (noting that district court can abuse its discretion and impose substantively unreasonable sentence by ignoring relevant factors). Specifically, Moorad insists that his gambling addiction and his sister's illness were key parts of "the nature and circumstances of" his supervised-release violations. § 3553(a)(1). Thus, he contends the district court erred by failing to place any weight on those circumstances.

But the district court didn't fail to consider these mitigating circumstances; instead, it found that Moorad's explanations about those circumstances weren't credible. *See United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (noting that appellate courts generally defer to district courts' sentencing decisions in part because lower court is in best position to "make[] credibility determinations"). For example, as the government points out, Moorad's sister's illness explains only his initial flight, not his decision to continue evading authorities for over two years after his sister's death. Thus, the district court didn't abuse its discretion in placing less weight on one factor—the possibly mitigating "nature and circumstances of the offense"—than on other § 3553(a) factors, including the need for deterrence and the severity of Moorad's violations. *See* § 3553(a); *United States v. Pena*, 537 F. App'x 801, 805 (10th Cir. 2013) (unpublished) (noting that "[a]bsconding from supervision is a very serious violation of the condition of one's supervised release"; rejecting argument that district court gave "insufficient consideration or weight to the reasons [defendant] offered for a lesser sentence").

5

Finally, we reject any suggestion in Moorad's briefing that his sentence is substantively unreasonable simply because it's "*twice* as long as the top end" of the range provided in the policy statement. Aplt. Br. 9. His assertion is factually correct: the policy statement's range is 12–18 months, and the district court imposed three years. *See* U.S.S.G. § 7B1.4 (listing sentencing ranges for revocation of supervised release). But the range in the policy statement is merely advisory; the district court need only consider it, not follow it. *See Vigil*, 696 F.3d at 1002. Indeed, "[a]ll discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *Id.* (quoting *United States v. Burdex*, 100 F.3d 882, 885 (10th Cir.1996)).

The district court didn't abuse its discretion in imposing the statutory maximum here. Accordingly, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge

6