**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 5, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS EMANUEL NEGRON-
HERNANDEZ,

    Defendant - Appellant.

No. 23-2153
(D.C. No. 2:23-CR-00727-MIS-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Luis Negron-Hernandez appeals his 24-month prison sentence for violating a condition of his supervised release. Because the district court adequately explained its sentence and did not otherwise abuse its discretion in imposing a sentence of this length, we affirm.

**Background**

In April 2023, deputies with the Hidalgo County Sheriff's Office conducted a

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

traffic stop in Lordsburg, New Mexico, on a vehicle being driven by Negron-Hernandez; a woman named Irene Martinez was in the front passenger seat, and two other individuals in the vehicle were unlawfully present in the United States. The deputies called border-patrol agents for assistance, and the agents arrested Negron-Hernandez. In a later interview, Negron-Hernandez told the agents that he had agreed with another individual to transport the undocumented noncitizens from Lordsburg to Phoenix, Arizona, in exchange for an undisclosed amount of money. Based on these facts, the government charged Negron-Hernandez with conspiring to transport undocumented noncitizens, in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I).

Negron-Hernandez pleaded guilty the next month.[1] The presentence investigation report (PSR) set his sentencing range under the United States Sentencing Guidelines (U.S.S.G. or the Guidelines) at either 6 to 12 months or zero to six months, depending on whether the district court applied forthcoming retroactive amendments to the Guidelines. The PSR also noted that despite having no *prior* convictions, Negron-Hernandez had criminal charges *pending* in two separate state-court cases. In September 2022, Maryland charged him with driving on a suspended license and later issued an arrest warrant for failure to appear. And in March 2023, Indiana charged him with committing domestic battery against

---

[1] In the intervening weeks, Negron-Hernandez had briefly been released on bond to live at a residential-reentry center. But after Negron-Hernandez attempted suicide, he was returned to federal custody, where he remained until sentencing.

Martinez, ordered him to have no further contact with Martinez, and later issued an arrest warrant for failure to appear.[2]

In an addendum, the PSR discussed where Negron-Hernandez might serve any term of supervised release. It disapproved Negron-Hernandez's preferred location in Lordsburg, explaining that the woman occupying the proposed residence was under pretrial supervision for a state charge. Moreover, the PSR relayed that the woman had never met Negron-Hernandez in person; instead, she had agreed to take him in to help Martinez. Finally, the PSR noted that a residential program at a facility called Victory Ministry in Las Cruces, New Mexico, had space available and that Negron-Hernandez was on the waiting list for two other residential-reentry facilities.

At sentencing for the conspiring-to-transport charge, the district court accepted the PSR, decided to vary downward based on the forthcoming Guidelines amendment, and set Negron-Hernandez's Guidelines range at zero to six months in prison. Agreeing with the parties' recommendations, it sentenced him to time served and two years of supervised release. For that term of supervised release, the district court declined to allow Negron-Hernandez to live in Lordsburg and instead directed him to Victory Ministry. In so doing, the district court specifically cautioned Negron-Hernandez against absconding, expressing concern about how he had failed to appear on the pending charge in Maryland and shortly thereafter been charged with a crime

---

[2] Negron-Hernandez's failure to appear in Indiana seems to stem from his arrest for the conspiring-to-transport charge underlying this appeal.

3

in Indiana. It additionally ordered Negron-Hernandez to participate in a mental-health treatment program and take prescribed mental-health medications as directed.

Less than two weeks into his term of supervised release, Negron-Hernandez absconded from Victory Ministry. And four days later, Lordsburg law enforcement arrested him and charged him with aggravated battery against a household member, interference with communications, and violation of a restraining order. In particular, the state criminal complaint alleged that Negron-Hernandez strangled Martinez, threw her to the ground, and—when she tried to call 911—seized her phone and threatened to kill her.

Based on Negron-Hernandez absconding from Victory Ministry, the government sought to revoke Negron-Hernandez's supervised release.[3] At his revocation hearing, Negron-Hernandez admitted to absconding but said that another resident had threatened to assault him if he did not leave. The probation officer confirmed that Negron-Hernandez had reported this threat to her and said that she discussed it with the pastor at Victory Ministry, who reported that there had been a disagreement and that Negron-Hernandez had later refused to accept the other resident's apology. Negron-Hernandez then told the district court that he had accepted the apology and further explained that the other resident threatened him again the next day. He said he had reported this second threat to the pastor but had

---

[3] The government also filed an amended petition charging a second violation for committing a new crime, but it ultimately chose not to pursue that second violation because the state charges remained pending.

not been able to reach his probation officer. He also said that he did not call his probation officer after arriving in Lordsburg because he had lost her card and did not remember her phone number.

In deciding what sentence to impose for this admitted absconding violation, the district court began by noting that because it had "some concerns about [Negron-Hernandez's] behavior and . . . record," it "might consider a variance" from the applicable advisory range of three to nine months. R. vol. 3, 14; *see also* U.S.S.G. § 7B1.4(a) (providing relevant range). The government asked the district court to impose "at least six months' confinement," emphasizing that despite his lenient time-served sentence for conspiring to transport, Negron-Hernandez quickly left Victory Ministry, just like he had absconded from Maryland, and was only discovered because he was arrested for other alleged crimes; the government also noted that he had violated the Indiana protection order. R. vol. 3, 14. Defense counsel requested four months, highlighting that Negron-Hernandez needed mental-health treatment and would perhaps do better in a more regulated residential program. The probation officer echoed the four-month request. In so doing, she noted that Negron-Hernandez had failed to avail himself of mental-health treatment at Victory Ministry and "was more interested in getting back to" Martinez, the victim in both the new domestic-violence case and the prior Indiana domestic-violence case. *Id.* at 19.

The district court ultimately followed through on its inclination to vary upward and imposed the statutory maximum of 24 months in prison plus one year of supervised release, citing Negron-Hernandez's "history and how quickly he's

violating all the [c]ourt's orders." *Id.* at 25; *see also* 18 U.S.C. § 3583(e)(3). After discussing some of the sentencing factors supporting its decision—including Negron-Hernandez's history and characteristics, the nature of circumstances of the offense, deterrence, protecting the public, and the need to provide Negron-Hernandez with treatment, *see* 18 U.S.C. § 3553(a)(1), (2)(B)–(C)—the district court asked defense counsel if he "request[ed] any further explanation for any aspects of the sentence imposed," R. vol. 3, 31. Defense counsel confirmed the district court's method for calculating the one-year term of supervised release, and the district court then asked again if defense counsel had "any other objections to the way the sentence was imposed or [needed] any further explanation . . . as to any aspect of the sentence." *Id.* at 31–32. Defense counsel replied affirmatively, emphasizing that neither probation nor the government requested such a long sentence and stating that the sentence was substantively unreasonable. The district court responded that it had considered the parties' recommendations but decided to vary upward based on the relevant § 3553(a) sentencing factors.

Negron-Hernandez now appeals.

## Analysis

Negron-Hernandez challenges his revocation sentence. When a defendant violates a condition of supervised release, the district court "may revoke the term of supervised release and impose prison time." *United States v. Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012). In so doing, the district court must consider a subset of the sentencing factors in § 3553(a), as well as the policy statements in Chapter 7 of the

6

Guidelines. *United States v. Cordova*, 461 F.3d 1184, 1188–89 (10th Cir. 2006). The Chapter 7 policy statements include suggested sentencing ranges for revocations of supervised release, but these ranges "are not mandatory and [are] even less compelling than established Guidelines." *Vigil*, 696 F.3d at 1003; *see also* U.S.S.G. Ch. 7, pt. A (noting that Sentencing Commission issued only "policy statements applicable to the revocation of . . . supervised release," not formal Guidelines).

We typically review sentences, including those imposed upon revocation of supervised release, for procedural and substantive reasonableness, and Negron-Hernandez advances arguments on both fronts. *See Vigil*, 696 F.3d at 1003. "[P]rocedural reasonableness focuses on whether the district court committed any error in calculating or explaining the sentence." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009). By contrast, "[r]eview for substantive reasonableness focuses on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in . . . § 3553(a).'" *Id.* (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008)). In either instance, review is generally for abuse of discretion. *See United States v. Maldonado-Passage*, 56 F.4th 830, 842 (10th Cir. 2022).

## I.    Procedural Reasonableness

Negron-Hernandez argues that the district court procedurally erred by failing to adequately explain the upward variance. When a district court imposes a revocation sentence outside the range provided by the Guidelines policy statement, the district "court must state 'the specific reason for the imposition of a sentence.'"

*United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1262 (10th Cir. 2018) (quoting § 3553(c)(2)). Nevertheless, a district court "'is not required to consider individually each factor listed in § 3553(a),' nor is it required to 'recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider' before issuing a sentence." *Cordova*, 461 F.3d at 1189 (quoting *United States v. Rodriguez-Quintanilla*, 442 F.3d 1254, 1258–59 (10th Cir. 2006)).

At the outset, the government argues that we should decline to review this failure-to-explain argument because Negron-Hernandez affirmatively waived it. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1273 (10th Cir. 2007) (explaining that we will not review intentionally relinquished arguments). We disagree. When the district court asked defense counsel if he had any further objections, he responded in the affirmative and indicated that the sentence was significantly longer than what the parties had discussed or requested. To be sure, defense counsel used the phrase "substantively unreasonable" in his answer and did not explicitly ask for additional explanation. But he told the district court that he did have a further objection and then emphasized the extent of the variance compared to the parties' proposed sentences. We do not construe this as an affirmative waiver of Negron-Hernandez's appellate argument that the district court procedurally erred by failing to provide adequate explanation for its variance, so we turn to the merits of that argument.[4] *Cf.*

---

[4] In so doing, we decline to resolve the government's alternative argument that Negron-Hernandez forfeited his procedural-reasonableness arguments by failing to

*United States v. Diequez*, 824 F.3d 718, 721 (8th Cir. 2016) (finding affirmative waiver of argument for additional explanation where defense counsel answered "no" to district court's question about additional explanation).

Negron-Hernandez asserts that the district court erred by failing to explain the extent of its variance—that is, "why a term higher than [nine] months but less than 24 was not sufficient." Aplt. Br. 10. He relatedly faults the district court for failing to explain why the parties' proposed sentences or some other hybrid sentence combining a prison term with a stay at a residential reentry center would not have been appropriate here. In support, Negron-Hernandez emphasizes the general principle that prison sentences must be "sufficient, but not greater than necessary." § 3553(a). But as the government responds, there is no requirement that a district court consider and reject on the record all other possible sentences before imposing its chosen sentence. *Cf. United States v. Sanchez-Juarez*, 446 F.3d 1109, 1117 (10th Cir. 2006) (noting "that there is inevitably a range of sentences that could be held reasonable"). On the contrary, "discussions of applicable sentences before a district court following the revocation of supervised release should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *Vigil*, 696 F.3d at 1002 (quoting *United States v. Burdex*, 100 F.3d 882, 885 (10th Cir. 1996)). And those discussions require no magic words or

---

make them below—application of the resulting plain-error review would not change the result in this case. *See Carrasco-Salazar*, 494 F.3d at 1272 (explaining that we review forfeited arguments for plain error).

specific discussions of various possible sentences. *See Cordova*, 461 F.3d at 1189. So

we discern no error in the district court's failure to discuss and reject other possible

sentences.

Negron-Hernandez next argues that the district court's explanation was

inadequate because it focused too much on his pattern of absconding and not enough

on his need for mental-health treatment. To be sure, the district court's § 3553(a)

discussion noted that the nature and circumstances of the offense involved Negron-

Hernandez quickly absconding from Victory Ministry, failing to report both his

reason for leaving and his new location to his probation officer, and ultimately being

discovered due to an unrelated arrest involving alleged domestic violence.[5] *See*

§ 3553(a)(1). The district court then additionally noted, as to Negron-Hernandez's

characteristics, that this conduct "fits [his] pattern of behaviors with the courts,"

including absconding from Maryland. R. vol. 3, 26; *see also* § 3553(a)(1).

Yet it mischaracterizes the record to say, as Negron-Hernandez does, that

"[t]he district court focused almost exclusively on 'absconding' to justify an onerous

imprisonment term." Aplt. Br. 15. The district court certainly relied on the pattern of

absconding, but it also emphasized that Negron-Hernandez had violated the terms of

the Indiana protection order at least twice, by being in the vehicle with Martinez

when initially arrested for the underlying transporting offense and when later arrested

---

[5] The district court explained that it was "not considering the allegations of the crime in Lordsburg as conclusive" and was "not sentencing based on that, but [it was] considering the nature of [Negron-Hernandez's] behavior, his history and characteristics, and the circumstances of this violation." R. vol. 3, 27.

for alleged domestic-violence. The district court also noted that Negron-Hernandez had not been deterred by his previous lenient sentences and that a longer sentence was needed to protect the public. *See* § 3553(a)(2)(B)–(C). Additionally, although Negron-Hernandez seeks to highlight that he absconded because of threats and went to a known address, this attempt to downplay his conduct overlooks the district court's reasonable focus on his failure to report either the relevant threat or his new address to his probation officer. Last, the district court did not ignore Negron-Hernandez's need for mental-health treatment; it specifically explained that the original time-served sentence provided an opportunity for such treatment, but Negron-Hernandez failed to avail himself of it. *See* § 3553(a)(2)(D). So we reject Negron-Hernandez's argument that the district court's explanation was inadequate on these bases.[6]

Negron-Hernandez also contends that the district court procedurally erred by failing to address the need to avoid unwarranted sentencing disparities. In support, he cites statistics purporting to show that offenders with similar criminal-history categories who abscond typically receive revocation sentences no longer than 18 months, as well as a list of other offenders and their various original and revocation sentences. But district courts are directed to avoid unwarranted disparities "among

---

[6] Negron-Hernandez also highlights that the district court imposed a lenient, time-served sentence in the first instance, despite knowing at that point about his previous absconding. But the district court imposed the initial lenient sentence *notwithstanding* its express concerns that Negron-Hernandez would abscond again. So when Negron-Hernandez in fact absconded again, the district court was free to reevaluate.

defendants with similar records who have been found guilty of similar conduct."
§ 3553(a)(6). And on the whole, the comparisons Negron-Hernandez provides do not
show this level of similarity. More critically, these comparisons do not account for
the district court's determination that the facts of this case justified any sentencing
disparity. For these reasons, we reject any disparity-related error and conclude
overall that the district court did not procedurally err.

## II.    Substantive Reasonableness

Negron-Hernandez next asserts that his sentence is substantively unreasonable.
When considering such a challenge, we ask "whether the length of the sentence is
reasonable given all the circumstances of the case in light of the factors set forth in
. . . § 3553(a)." *Alapizco-Valenzuela*, 546 F.3d at 1215 (quoting *United States v.
Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)).

As the government highlights, much of Negron-Hernandez's substantive-
reasonableness argument overlaps with his procedural-reasonableness argument. For
instance, Negron-Hernandez asserts again that the district court focused too much on
his history of absconding and not enough on his need for mental-health treatment.
But we have already detailed the district court's thorough assessment of the relevant
§ 3553(a) factors, and this argument essentially asks us to reweigh the sentencing
factors, which we will not do. *See United States v. Gross*, 44 F.4th 1298, 1305 (10th
Cir. 2022). Negron-Hernandez additionally returns to his disparity argument,
comparing the length of his sentence to the sentences of supposedly similarly situated
defendants. But we see no abuse of discretion in the district court's rationale that the

specifics of Negron-Hernandez's conduct—including multiple instances of absconding, violating a protective order, and alleged domestic violence—warranted a longer sentence. Negron-Hernandez relatedly emphasizes the extent of the variance from the sentencing range in the Chapter 7 policy statement, but when assessing substantive reasonableness, we do not apply "a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007). Moreover, "a court does not need to find severe or exceptional circumstances to impose a sentence above the range suggested in the Chapter 7 policy statements, which are not mandatory and even less compelling than established Guidelines." *Vigil*, 696 F.3d at 1002–03.

In the end, "the balance struck by the district court among the factors set out in § 3553(a) [wa]s not arbitrary, capricious, or manifestly unreasonable." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008). We must therefore defer to its decision to impose a 24-month revocation sentence, "even if we would not have struck the same balance in the first instance." *Id.*

## Conclusion

Because the district court adequately explained Negron-Hernandez's 24-month

revocation sentence and did not otherwise abuse its discretion in imposing a sentence of this length, we affirm.

Entered for the Court

Nancy L. Moritz
Circuit Judge