**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EMANUEL YAZZIE,

Defendant - Appellant.

No. 25-2047
(D.C. No. 1:15-CR-00431-KWR-1)
(D.N.M.)

_____

## ORDER AND JUDGMENT\*

_____

Before **HARTZ**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.

_____

Emanuel Yazzie appeals the sentence imposed upon his fourth revocation of supervised release. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

---

\* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, *res judicata*, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and 10th Circuit Rule 32.1.

**I**

**A**

In May 2016, Mr. Yazzie was convicted after pleading guilty to one count of sexual abuse of a minor in Indian Country in violation of 18 U.S.C. § 2243(a). The district court sentenced him to thirty-six months' imprisonment followed by ten years of supervised release. Mr. Yazzie was released from prison in June 2018. Several months later, in January 2019, the United States Probation Office petitioned the district court to revoke his supervision. The petition alleged Mr. Yazzie violated the conditions of his supervised release by using cocaine, having direct contact with his victim, and using alcohol. Mr. Yazzie admitted to violating the release conditions and, in April 2019, the district court revoked his supervision and sentenced him to six months' imprisonment followed by ten years of supervised release.

Mr. Yazzie served his revocation sentence and resumed supervised release. The Probation Office thereafter filed two reports alerting the district court to additional violations: one in October 2019 and another in February 2020. With respect to the October 2019 report, Mr. Yazzie admitted using alcohol, Suboxone, and methamphetamine. The Probation Office recommended the district court continue Mr. Yazzie's supervised release rather than revoke it. The district court agreed. With respect to the

February 2020 report, Mr. Yazzie admitted to his probation officer that he consumed alcohol. The Probation Office again recommended not revoking his supervised release. And again, the district court agreed with this recommendation.

Two months after the second report, in April 2020, the Probation Office petitioned the district court to revoke Mr. Yazzie's supervised release. This second petition alleged four violations: three new criminal charges—aggravated battery upon a healthcare worker, N.M. STAT. ANN. § 30-3-9.2; battery upon a peace officer, *id.* § 30-22-24; and assault upon a healthcare worker, *id.* § 30-3-9.2(B)(1)—and an instance of alcohol use. Mr. Yazzie admitted two of the new-crime violations and the use-of-alcohol violation. In September 2020, the district court revoked his supervision and imposed a ten-month prison sentence followed by nine years of supervised release. Mr. Yazzie served his second revocation sentence and was released in February 2021.

By March 2021, the Probation Office had filed a third revocation petition. This petition alleged two violations of Mr. Yazzie's supervised release conditions: Mr. Yazzie possessed an unauthorized cell phone at his Residential Reentry Center (RRC) and refused to provide the RRC staff with the cell phone password. One month later, the Probation Office filed an amended revocation petition to allege two more violations: Mr. Yazzie was

charged with disorderly conduct, N.M. STAT. ANN. § 30-20-1[1] and used alcohol. Mr. Yazzie admitted to all but the new-crime violation. In June 2021, the district court again revoked his supervision and sentenced him to thirteen months' imprisonment followed by five years of supervised release. Mr. Yazzie served the third revocation sentence and was ultimately released in April 2022.[2]

**B**

We now arrive at the facts underlying this appeal. One day after Mr. Yazzie's release from prison in April 2022, New Mexico State Police responded to a domestic violence incident  and encountered Mr. Yazzie, his girlfriend, and a child. The officers noticed Mr. Yazzie smelled like alcohol. Mr. Yazzie's girlfriend told the officers that Mr. Yazzie had been drinking

---

[1] The April 2021 amended revocation petition alleges Mr. Yazzie "was charged with Drunk or Disorderly in violation of New Mexico Statute 125-1-6." SRI.33. That statute, however, has nothing to do with drunk or disorderly conduct. We assume the state charged Mr. Yazzie under the disorderly conduct statute, N.M. STAT. ANN. § 30-20-1. But that discrepancy has no impact on the disposition in this appeal.

[2] The Probation Office never learned of Mr. Yazzie's release. Apparently due to an administrative mishap, in November 2021 the Bureau of Prisons mistakenly released Mr. Yazzie from custody before he completed his third revocation sentence. Because he failed to report to the Residential Reentry Center (RRC) as scheduled, he was placed on "escape status." RI.28. But roughly a week after his mistaken release, Mr. Yazzie "returned to BOP custody[.]" Ans. Br. at 4. He served the remainder of his third revocation sentence and was, as indicated, properly released in April 2022. The Probation Office knew none of this. Until January 2025, the Probation Office believed Mr. Yazzie was a fugitive on escape status.

and became upset when she asked to drive the vehicle. Mr. Yazzie allegedly "punched the rear-view mirror of the car" and then held his girlfriend against the seat by her throat for several seconds. Ans. Br. at 5. The officers arrested Mr. Yazzie and charged him with battery against a household member, N.M. STAT. ANN. § 30-3-15, and criminal damage to property of a household member, *id.* § 30-3-18(A)–(B). Mr. Yazzie failed to appear in court for these charges.

Just over a year later, in July 2023, the State of Arizona charged Mr. Yazzie with failing to register as a sex offender in violation of ARIZ. REV. STAT. ANN. § 13-3821(A). Mr. Yazzie pleaded guilty to this offense but then failed to appear at his sentencing. Another year passed. In April 2024, Mr. Yazzie was convicted in Phoenix Municipal Court of trespassing, *id.* § 13-1502(A)(1), and shoplifting, *id.* § 13-1805. Mr. Yazzie received thirty-six months of probation for these convictions.

In January 2025, the Probation Office petitioned the district court to revoke Mr. Yazzie's supervised release for the fourth time. This fourth revocation petition alleged Mr. Yazzie (1) failed to report to the Probation Office following his April 2022 release; (2) was charged on April 2, 2022 with battery against a household member and criminal damage to property of a household member, N.M. STAT. ANN. §§ 30-3-15, 30-3-18(A)–(B); (3) was convicted on April 28, 2024 of trespassing and shoplifting, ARIZ. REV. STAT.

ANN. §§ 13-1502(A)(1), 13-1805; and (4) was charged on July 7, 2023 and subsequently convicted of failing to register as a sex offender, *id.* § 13-3821(A).

In March 2025, Mr. Yazzie was arrested on the fourth revocation petition in Phoenix, Arizona and transferred to the District of New Mexico for revocation proceedings. Mr. Yazzie admitted the first, third, and fourth violations alleged in the petition. In exchange, the government agreed to dismiss the second alleged violation, which was based on the April 2022 charges in New Mexico for battery against a household member and criminal damage to property of a household member. The district court informed Mr. Yazzie of the possible penalties he faced before accepting his admission to three of the four alleged violations.

The district court proceeded to sentencing. Under U.S.S.G. § 7B1.1, Mr. Yazzie's most serious violation was Grade B. *See* U.S.S.G. § 7B1.1(a)(2) (2024) (stating a Grade B violation includes "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year").[3] And with his criminal history category of II, a Grade

---

[3] We use the 2024 Guidelines because they were in effect at the time of Mr. Yazzie's revocation sentencing in March 2025. *See United States* v. *Sullivan*, 255 F.3d 1256, 1259 (10th Cir. 2001) (noting "a sentencing court must apply the guidelines in effect at the time of sentencing . . . unless such application would violate the *ex post facto* clause"); U.S.S.G. § 1B1.11(a) ("The

B violation established a revocation imprisonment range of six to twelve months. *See id.* § 7B1.3(b) ("In the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in §7B1.4[.]"); *id.* § 7B1.4(a) (setting forth the revocation table). The maximum statutory penalty, however, was twenty-four months followed by life on supervised release. *See* 18 U.S.C. § 3583(e)(3) (stating that "a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if [the original] offense is a class C or D felony").[4]

Mr. Yazzie requested a sentence at "the low end" of the six-to-twelve-month range to facilitate his participation in a treatment program. RII.13. Although he acknowledged this was the fourth revocation petition, defense counsel urged the district court to consider Mr. Yazzie's "circumstances," "interests," and the fact that he "t[ook] responsibility[.]" RII.12–13. The government suggested an eighteen-month prison sentence followed by five years of supervised release. In the government's view, it was time "to

---

court shall use the Guidelines Manual in effect on the date that the defendant is sentenced.").

[4] Recall, Mr. Yazzie was originally convicted of sexual abuse of a minor in Indian Country, an offense punishable by imprisonment for "not more than 15 years[.]" 18 U.S.C. § 2243(a). A § 2243(a) violation therefore constitutes a Class C felony under federal law. *See id.* § 3559(a)(3) (stating an offense is a Class C felony if the maximum term of imprisonment is "less than twenty-five years but ten or more years").

ratchet things up" because Mr. Yazzie "ha[d] shown no inclination or proclivity to comply with any sort of supervised release conditions." RII.16. The government emphasized Mr. Yazzie "committed new crimes over and over and over again" in the six years since his original sentencing. RII.15. And because he was "getting terminated from residential reentry homes" for failing to comply with "standard conditions," the government believed sending Mr. Yazzie to a treatment facility would not "be the panacea or the cure-all[.]" RII.15–16.

The district court observed Mr. Yazzie had "not done well" on supervised release "from the very beginning." RII.16. Mr. Yazzie repeatedly violated the conditions of his supervised release, the district court said, despite the imposition of increasingly lengthier revocation sentences. *See, e.g.*, RII.17 ("And the Court imposed a heavier sentence trying to get your attention and to protect the public[.] . . . That didn't work."). The district court emphasized the previous thirteen-month revocation sentence, "which was above the advisory guideline range, . . . did not deter" Mr. Yazzie. RII.18. That Mr. Yazzie "violate[d] the law every chance that [he] ha[s] had" demonstrated he is "a danger to the community, which certainly push[ed] upward on what" the district court "consider[ed]" to be "an appropriate sentence[.]" RII.18. At the same time, the district court recognized Mr.

8

Yazzie's "substance abuse problem" and "need [for] treatment," and said it would "make sure" Mr. Yazzie received that treatment. RII.18.

The district court confirmed it "reviewed . . . the factors set forth in 18 U.S.C. § 3583(e)[.]" RII.19. "[I]n considering a sentence that [was] sufficient but not greater than necessary to support the goals of sentencing[,]" the district court did not believe "a guideline sentence [was] appropriate for" Mr. Yazzie. RII.18. The district court explained:

> You have been convicted [for] failing to register as a sex offender, trespassing and shoplifting, and you have displayed a pattern of egregious noncompliant conduct and a sentence above the guideline range is warranted, not only to promote respect for the law – I take that back. To promote deterrence by you, hopefully, and to protect the public from further crimes by you, but also while you're in . . . custody, it will enable you to get the needed vocational and educational training that you need, including hopefully some treatment for substance abuse problems that you have.

RII.20. The district court sentenced Mr. Yazzie to eighteen months' imprisonment followed by five years of supervised release.

This timely appeal followed.

## II

"[W]e will not reverse a revocation sentence imposed by the district court if it can be determined from the record to have been reasoned and reasonable." *United States* v. *Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (internal quotation marks and brackets omitted). "[A] 'reasoned'

sentence is one that is 'procedurally reasonable'; and a 'reasonable' sentence is one that is 'substantively reasonable.'" *United States* v. *McBride*, 633 F.3d 1229, 1232 (10th Cir. 2011). Mr. Yazzie contends his revocation sentence is both procedurally and substantively unreasonable. We address these challenges in turn. *See United States* v. *Maldonado-Passage*, 56 F.4th 830, 841–42 (10th Cir. 2022) ("Review of sentencing reasonableness is a two-step process: first, this court ensures the district court did not err procedurally and, if not, analyzes the substantive reasonableness of the sentence.").

## A

Mr. Yazzie contends his revocation sentence is procedurally unreasonable because the district court "improperly relied on retribution and punishment factors for [his] . . . sentence." Op. Br. at 5. Before discussing the merits of this argument, we must first address preservation and our standard of review.

## 1

"It is well-settled that our precedent imposes a 'requirement of contemporaneous objection to procedural errors[.]'" *United States* v. *Rocha*, 145 F.4th 1247, 1261 (10th Cir. 2025) (quoting *United States* v. *Romero*, 491 F.3d 1173, 1177 (10th Cir. 2007)). We review a preserved "claim of procedural unreasonableness for abuse of discretion, 'under which we review de novo the district court's legal conclusions regarding the

10

[G]uidelines and review its factual findings for clear error.'" *United States* v. *Ortiz-Lazaro*, 884 F.3d 1259, 1262 (10th Cir. 2018) (quoting *United States* v. *Gantt*, 679 F.3d 1240, 1246 (10th Cir. 2012)). But "objections that a party fails to raise before the district court are forfeited and, ordinarily, only may be reviewed for plain error." *Rocha*, 145 F.4th at 1261.

The government says Mr. Yazzie forfeited his procedural reasonableness challenge because he "did not object to the district court's justification for his revocation sentence[.]" Ans. Br. at 10. And because Mr. Yazzie did not request plain-error review in his opening brief, the government contends his procedural reasonableness challenge is now waived. *See United States* v. *Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) ("When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise."). The government says we should "decline" to review Mr. Yazzie's procedural reasonableness argument "[t]o the extent [he] attempts to" argue plain error in his reply brief. Ans. Br. at 11–12. This is an appropriate approach, the government argues, "particularly where the lack of preservation is so obvious that [Mr.] Yazzie cannot have simply overlooked it." Ans. Br. at 12.

11

We conclude plain-error review applies. Mr. Yazzie concedes he did not object to the district court's purported consideration of § 3553(a)(2)(A)'s retributive factors. And, as the government correctly points out, he failed to argue for plain-error review in his opening brief. But "we have left open the door for a criminal defendant to argue error in an opening brief and then allege plain error in a reply brief after the Government asserts waiver." *Leffler*, 942 F.3d at 1198. Mr. Yazzie comprehensively addresses the plain error standard in his reply brief. That "is sufficient to permit us to consider [his procedural reasonableness challenge] under plain error review." *United States* v. *Chavez-Morales*, 894 F.3d 1206, 1214 (10th Cir. 2018).

"Plain-error review requires Mr. [Yazzie] to 'establish that (1) the district court committed error; (2) the error was plain—that is, it was obvious under current well-settled law; (3) the error affected [his] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" *United States* v. *Booker*, 63 F.4th 1254, 1258 (10th Cir. 2023) (quoting *United States* v. *Perez-Perez*, 992 F.3d 970, 974 (10th Cir. 2021)). "Failure to establish any one of these elements precludes reversal." *United States* v. *Romero*, 132 F.4th 1208, 1218 (10th Cir. 2025). As we will explain, Mr. Yazzie's procedural reasonableness challenge fails at the first prong because he cannot show error.

**2**

"[A] district court commits procedural error when it misunderstands or misapplies the law." *United States* v. *Farley*, 36 F.4th 1245, 1250 (10th Cir. 2022) (quoting *United States* v. *Gallegos-Garcia*, 618 F. App'x 402, 405 (10th Cir. 2015) (unpublished)). Here, we are concerned with supervised release revocation sentencing under 18 U.S.C. § 3583(e). That statutes says a district court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)" choose to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release" if the district court "finds by a preponderance of the evidence that the defendant violated a condition of supervised release[.]" 18 U.S.C. § 3583(e)(3).

In accordance with the plain text of § 3583(e), we have explained that, "[b]efore deciding whether to revoke a term of supervised release and determining the sentence imposed after revocation, the district court *must* consider the factors set out in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)."[5] *McBride*, 633 F.3d at 1231

---

[5] We have said the district court "must consider the factors in 18 U.S.C. § 3553(a) *and* the policy statements in Chapter 7 of the Sentencing Guidelines."

13

(emphasis added) (citing 18 U.S.C. § 3583(e)). "Notably absent from this list is § 3553(a)(2)(A)[.]" *Booker*, 63 F.4th at 1258. That provision directs district courts to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a)(2)(A). "Section 3353(a)(2)(A)," we have said, "represents 'retribution,' one of the 'four purposes of sentencing' that courts must consider when fashioning a sentence during the initial sentencing process." *Booker*, 63 F.4th at 1258 (quoting *Tapia* v. *United States*, 564 U.S. 319, 325 (2011)).

Recently, in *Esteras* v. *United States,* the Supreme Court clarified that § 3583(e)'s omission of any reference to § 3553(a)(2)(A) means "[d]istrict courts may not consider the retributive purpose of § 3553(a)(2)(A) before revoking supervised release."[6] 606 U.S. 185, 203 (2025). Although "§ 3553(a)

---

*United States* v. *Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012) (emphasis added). But § 3553(a)(4)(B)—one of the factors § 3583(e) specifically directs the district court to consider—already requires the district court to review "the applicable guidelines or policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3553(a)(4)(B). Mr. Yazzie does not argue the district court erred by failing to consider Chapter 7.

[6] *Esteras* resolved a circuit split, and in so doing, reaffirmed our circuit precedent. In *United States* v. *Booker*, we already concluded "[t]he omission of § 3553(a)(2)(A) from the list of sentencing factors enumerated in § 3583(e) means that district courts may not consider the need for a revocation sentence to (1) 'reflect the seriousness of the offense,' (2) 'promote respect for the law,' and (3) 'provide just punishment for the offense' when

lays out 10 factors that inform a district court's sentencing decision[,]" the Supreme Court explained, "[§] 3583(e) provides that a district court may revoke a term of supervised release 'after considering' 8 of these 10 factors." *Id.* at 195. "The natural implication is that Congress did not intend for courts [in the supervised release revocation context] to consider . . . § 3553(a)(2)(A)[.]" *Id.*

This matters because "[w]hen a sentencing statute mandates consideration of certain factors, it is procedural error to consider unenumerated factors." *Booker*, 63 F.4th at 1259. Still, as the Supreme Court recently reminded us in *Esteras*: "Much will turn on whether the defendant objects." 606 U.S. at 202. In the plain error context, "the district court's order revoking supervised release and requiring reimprisonment will be affirmed unless it is '"clear"' or '"obvious"' that the district court actually relied on § 3553(a)(2)(A)—because it did so either expressly or by unmistakable implication." *Id.* at 202–03 (citing *United States* v. *Olano*, 507 U.S. 725, 734 (1993)).

Mr. Yazzie insists he meets this standard, so we should reverse. He argues, "it is absolutely clear that [his] revocation sentence is retribution for the original sentence and lack of compliance despite the previous

---

modifying or revoking a term of supervised release." 63 F.4th 1254, 1261 (10th Cir. 2023).

punishments." Op. Br. at 11. He does not meaningfully explain why this is so or otherwise develop an argument beyond this conclusory assertion.[7] We discern no error in any event.

The district court explained it "reviewed the violation report and the factors set forth in 18 U.S.C. § 3583(e)," and had "great concern under the 3583 factors" due to Mr. Yazzie's repeated "violations of the law, including . . . failure to register as a sex offender[.]" RII.17, 19. True, the district court briefly referenced an impermissible § 3553(a)(2)(A) factor—the need to promote respect for the law. But it immediately recognized its mistake and corrected course saying, "I take that back." RII.20. The district court then clarified the revocation sentence was necessary to deter Mr. Yazzie, "protect the public from further crimes by [Mr. Yazzie]," and facilitate "vocational and educational training" and substance abuse treatment for Mr. Yazzie. RII.20. *See* 18 U.S.C. § 3553(a)(2)(B), (a)(2)(C), (a)(2)(D). As the government persuasively observes, "the district court expressly referred (three times) to the § 3583(e) factors" and "tied [Mr.] Yazzie's pattern of noncompliance

---

[7] Mr. Yazzie's failure to adequately develop this argument provides an independent basis for us to reject it. *See United States* v. *Clay*, 148 F.4th 1181, 1201 (10th Cir. 2025) (noting we "will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" (quoting *United States* v. *Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004))).

16

while on conditions of release to either the need to protect the public or to provide adequate deterrence[.]" Ans. Br. at 15.

The same is true for the district court's reference to Mr. Yazzie's original offense. Here, the district court said Mr. Yazzie's "base offense, sexual abuse of a minor, is a very serious offense." RII.16. But as the government correctly points out, the district court referenced the seriousness of Mr. Yazzie's underlying crime "in the context of public-safety concerns related to his continued non-compliance with sex-offender-registration requirements[.]" Ans. Br. at 16 (citing RII.17–18). There is nothing improper about the district court's approach. *See Esteras*, 606 U.S. at 200 (explaining a district court "may consider the nature and circumstances of the offense as relevant for the considerations set forth in §§ 3553(a)(2)(B), (C), and (D)—namely, deterrence, incapacitation, and rehabilitation—but a court cannot consider the nature and circumstances of the offense as relevant to § 3553(a)(2)(A)'s retributive focus."); *United States* v. *Reyes*, No. 25-2144, 2026 WL 1004501, at *4 (10th Cir. Apr. 14, 2026) (unpublished) (holding a "district court does not commit error . . . by observing that a defendant has committed serious crimes in the past, has been punished for those crimes, but was not deterred from committing

17

another crime" because "[t]hat factors into the need to protect the public from further crimes of the defendant").[8]

It is far from "'"clear"' or '"obvious"' that the district court actually relied on § 3553(a)(2)(A)[.]" *Esteras*, 606 U.S. at 202–03. On this record, Mr. Yazzie has not carried his burden of proving any procedural error—let alone a plain one—in the district court's revocation sentence.[9] Given our conclusion, "we need not reach the other three prongs of plain error review[.]" *United States* v. *Wireman*, 849 F.3d 956, 966 (10th Cir. 2017).

**B**

We turn now to Mr. Yazzie's substantive reasonableness challenge. "[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the totality of the circumstances." *United States* v. *Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012) (alteration in original) (internal quotation marks omitted). "A district court abuses its discretion when it renders a judgment

---

[8] We can rely on unpublished decisions for their "persuasive value." *United States* v. *Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015) (citing 10th Cir. R. 32.1).

[9] Mr. Yazzie claims the district court "did not significantly consider the 'rehabilitative ends' of sentencing or provide [him] 'with postconfinement assistance' as discussed by the Supreme Court." Op. Br. at 11–12. This passing argument is waived. *See United States* v. *Martinez*, 92 F.4th 1213, 1264 (10th Cir. 2024) ("'[C]ursory statements, without supporting analysis and case law' are not the kind of briefing that preserves arguments for review[.]" (quoting *Bronson* v. *Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007))).

18

that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Ortiz-Lazaro*, 884 F.3d at 1265 (quoting *United States* v. *Steele*, 603 F.3d 803, 809 (10th Cir. 2010)).

Generally, a sentence is substantively reasonable so long as it does not "'exceed[] the bounds of permissible choice,' given the facts and the applicable law in the case at hand." *United States* v. *McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quoting *United States* v. *Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986)). But "reasonableness review 'must not be regarded as a rubber stamp.'" *United States* v. *Vazquez-Garcia*, 130 F.4th 891, 900 (10th Cir. 2025) (quoting *United States* v. *Pinson*, 542 F.3d 822, 836 (10th Cir. 2008)). When, as here, we are "reviewing a district court's decision to impose an upward variance, we 'must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *United States* v. *Guevara-Lopez*, 147 F.4th 1174, 1184 (10th Cir. 2025) (quoting *Gall* v. *United States*, 552 U.S. 38, 50 (2007)); *see also Ortiz-Lazaro*, 884 F.3d at 1265 (holding a revocation sentence is substantively reasonable so long as the district court did not abuse its discretion "in determining that the § 3553(a) factors supported [the] sentence . . . and justified a substantial deviation from the Guidelines range" (alteration in original) (quoting *Gall*, 552 U.S. at 56)).

Mr. Yazzie contends the district court's sentencing decision "was not based on a carefully tailored evaluation of the [§ 3583(e) and § 3553(a)] factors[.]" Op. Br. at 16. The district court, he argues, "ignored numerous factors," "chose an extremely harsh punishment," and offered "an arbitrary, whimsical, capricious, and manifestly unreasonable set of bases for its decision." Op. Br. at 16. Mr. Yazzie also says the district court's sentencing "decision is unsupported by evidence in the record." Op. Br. at 16. He appears to suggest his revocation sentence is unreasonably long because he did not "attempt[] to harm any children, any other persons, or be a danger to the community." Op. Br. at 16. He also contends his eighteen-month revocation sentence is too long, particularly because he "only received 36 months [in prison] for the original [offense]."[10] Op. Br. at 15.

We are not persuaded. The district court "reviewed the violation report and the factors set forth in 18 U.S.C. § 3583(e)[.]" RII.19. Before imposing the revocation sentence, the district court discussed Mr. Yazzie's lengthy history of violating his supervised release conditions and cited its

---

[10] Mr. Yazzie's substantive reasonableness challenge is almost entirely undeveloped. He does not identify which § 3553(a) factors the district court supposedly "ignored." Op. Br. at 16. He does not articulate how his revocation sentence is "arbitrary, whimsical, capricious, and manifestly unreasonable[.]" Op. Br. at 16. And he never explains why the evidence does not support that sentence. This deficiency provides an independent basis for rejecting Mr. Yazzie's substantive reasonableness challenge. *See Clay,* 148 F.4th at 1201.

"responsibility to protect the public from further crimes" in light of Mr. Yazzie's ongoing "danger to the community[.]" RI.16–18. On this front, the district court emphasized that its previous above-Guideline revocation sentence of thirteen months "did not deter" Mr. Yazzie. RI.18. The district court reasoned, "a sentence within the [G]uideline range [was] not sufficient to support the goals of sentencing," and it needed to "go higher than that to do so." RII.18–19.

Mr. Yazzie's suggestion that the substantive reasonableness of a revocation sentence can be assessed by comparing it to the length of the original sentence has no support in the law. As the government points out, none of the § 3553(a) factors incorporated by § 3583(e) directs the district court to consider the length of the defendant's original sentence "as a benchmark for the reasonableness of his later revocation sentence." Ans. Br. at 22. Mr. Yazzie does not point us to any authority holding otherwise.

Nor does the record support Mr. Yazzie's conclusory argument that the district court's sentencing decision is arbitrary. Contrary to Mr. Yazzie's assertion, the record amply supports the length of the sentence imposed. We find nothing arbitrary about the district court's choice particularly given the inefficacy of lesser revocation sentences on three prior occasions. *See, e.g.*, *Vigil*, 696 F.3d at 1002 (finding revocation sentence substantively reasonable where the district court "considered [the defendant]'s blatant,

21

repeated violations of the conditions of her probation and supervised release and determined the . . . [recommended range] was insufficient"). "Under the [G]uidelines, recidivism is generally a reason for increased sentencing severity." *Steele*, 603 F.3d at 809. As the district court's discussion makes clear, Mr. Yazzie's recidivism provides a "sufficiently compelling" justification "to support the degree of the variance" here—a six-month upward deviation from the top of the applicable Guideline range. *Gall*, 552 U.S. at 50.

## III

We **AFFIRM** Mr. Yazzie's revocation sentence.

Entered for the Court

Veronica S. Rossman
Circuit Judge